## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY PAGE** | : | |
| 91 Forest Drive | : | **COMPLAINT** |
| Chillicothe OH  45601 | : | |
| | : | |
| Plaintiff, | : | Case No. |
| | : | |
| **v.** | : | |
| | : | |
| **PACCAR INC. d/b/a Kenworth** | : | |
| 777 106th Ave NE | : | **Jury Demand Endorsed Hereon** |
| Bellevue WA  98004 | : | |
| | : | |
| and | : | |
| | : | |
| **JOE ALLAGREE, Manager** | : | |
| 275 Keo Lane | : | |
| South Salem, OH  45681 | : | |
| | : | |
| and | : | |
| | : | |
| **JASON PERRY**, Manager | : | |
| c/o Kenworth Truck Co. | : | |
| 65 Kenworth Drive | : | |
| Chillicothe, OH 45601 | : | |
| | : | |
| and | : | |
| | : | |
| **JACK SCHMITT,** Manager | : | |
| c/o Kenworth Truck Co. | : | |
| 65 Kenworth Drive | : | |
| Chillicothe, OH 45601 | : | |
| Defendants. | : | |

Now comes Plaintiff Timothy Page, and for his Complaint against Defendants, states as follows:

## PARTIES

1.      Plaintiff Timothy Page [hereinafter "Plaintiff"] is an individual African-American male residing in Chillicothe, Ohio, Ross County.

2.      Defendant PACCAR INC. d/b/a Kenworth Truck Company ["Kenworth"] is a truck manufacturer doing business in Ross County in the state of Ohio.

3.  Defendants Allagree, Schmitt and Perry are or were Kenworth management employees and were Plaintiff's supervisors at all times relevant.

## JURISDICTION AND VENUE

4.      Plaintiff's claims arise under Title VII of the Civil Rights Act.  Jurisdiction is predicated on 29 U.S.C. 1132. This court has pendant jurisdiction over Plaintiff's state law claims.

5.      Plaintiff filed a complaint with the EEOC in June 2016 and received a Dismissal and Notice of Suit Rights from the Equal Employment Opportunity Commission with a mailed date of March 6, 2017, therefore Plaintiff's Complaint is timely filed within the 90-day deadline from receipt of the notice.

6.      Defendant Kenworth is a corporation doing business in Ross County, Ohio, therefore venue is proper in the Southern District of Ohio, Eastern Division.

## FACTS COMMON TO ALL CLAIMS

7.      Plaintiff became employed by Defendant Kenworth on or around July 12, 2004, as a materials supervisor.

8.      In July 2013, Defendant Schmitt forced Plaintiff, an African-American and one of the only minorities in management, to take a position on second shift, a much less desirable shift.

9.      Plaintiff received shift differential pay, however he was the only first shift manager forced to second shift without a promotion or raise.

10.      A similarly-situated white employee with less seniority than Plaintiff was not forced to second shift.

11.     Other similarly-situated white managers who were moved to second shift were promoted.

12.     Plaintiff requested for more than a year to be transferred back to days; Defendant Allagree blocked the transfer and hazed Plaintiff mercilessly about being on second shift.

13.     As a result of the transfer, two new team leads (both white) were placed on Plaintiff's shift.

14.     Per custom and policy at Kenworth during Plaintiff's employment, it was always the job of the team leads to ensure that material handlers had the proper training.

15.     The two team leads that Plaintiff inherited placed two new material handlers on forklifts without having them trained, resulting in workplace accidents.

16.     After the first workplace accident, Plaintiff contacted the training department to ensure that the team leads had not missed any other training issues; he was told that his department was "all covered."

17.     Defendant Allagree and Perry, with Schmitt's blessing, wrote up Plaintiff for these incidents; the white team leads who were actually responsible for the issue were not disciplined, nor was anyone in the training department disciplined for telling Plaintiff that none of the other materials handlers needed training.

18.     Additionally, Plaintiff suffered disparate treatment in that he was targeted for discipline and write-ups in situations where his similarly-situated white counterparts were not.

19.     Plaintiff turned in his timecards in a timely manner with all requests for vacation time.

20.     On several occasions, his time cards would be placed back on his desk by Defendant Allagree unsigned and unprocessed.

21.     Many times, Defendant Allagree held Plaintiff's timecards for weeks without signing them or notifying Plaintiff of any problem with them.

22.     Defendant Allagree often told Plaintiff that he would not sign his time cards because he did not trust that he had recorded his time properly, despite the fact that Plaintiff had never been disciplined for improperly recording time.

23.     This purposeful delay by Defendant Allagree resulted in Plaintiff's paychecks being miscalculated on several occasions and often resulted in Plaintiff having to wait weeks for overtime pay.

24.     Defendant Allagree did not play such games with other similarly-situated white employees in the department; instead, he promptly signed their time cards to ensure that they were paid accurately and on time.

25.     Defendant Allagree's differential treatment of Plaintiff was motivated by Plaintiff's race, African-American.

26.     Plaintiff became so frustrated with this refusal by Defendant Allagree to process his timecards he finally told Defendant Allagree that he would leave his timecards on his desk and that Defendant Allagree could retrieve them any time he wished.

27.     In January 2015, Plaintiff requested vacation time to attend the National Championship game in which Ohio State was playing.

28.     Plaintiff made no secret of his plans and promptly noted the vacation request on his timecards and left them on his desk for Defendant Allagree, per the agreed-upon protocol.

29.     Defendant Allagree of course refused to process the time cards and, as a result, Plaintiff was accused by Defendants of stealing time from the company and issued a written reprimand in March 2015.

30.     On February 25 to 27, 2015, Plaintiff was off work sick for three days; Plaintiff's doctor had written a doctor's excuse for those three days.

31.     On the third day of his illness, Plaintiff was feeling somewhat better and ordered himself some food at a local restaurant; he went to pick it up and coincidentally ran into another Kenworth employee who was at the restaurant having a retirement party.

32.     Plaintiff briefly congratulated his fellow employee, got his food and left; during this brief encounter someone snapped a photo of Plaintiff and posted it on Facebook.

33.     On his timesheets, Plaintiff had actually requested one sick day and two vacation days.

34.     This was common practice among Kenworth employees.

35.     Plaintiff explained to Defendant Allagree that he has simply ran out to get some food and further that the day his picture was taken, he was taking a vacation day, as is common practice.

36.     Defendant Allagree was extremely angry, despite this reasonable explanation.

37.     Defendants Perry and Allagree then wrote up Plaintiff again for allegedly stealing company time despite the fact that Plaintiff had legitimately taken a vacation day and could not, under any interpretation, have been stealing company time.

38.     Plaintiff was actually written up for using a vacation day, something that, to Plaintiff's knowledge has never happened to any other white employee at Kenworth.

5

39. Defendants' conduct toward Plaintiff was motivated by racial animus toward Plaintiff.

40. The March 2015 final write-up exists because Defendant Allagree sabotaged Plaintiff's timecards, based in his racial animus toward Plaintiff, and because Defendant Perry disciplined Plaintiff for doing something that every other Kenworth employee did on a regular basis, which was to simply use a vacation day.

41. Unfortunately for Plaintiff, the March 2015 write-up had significant and dire consequences for his employment.

42. Had the March write-up not been put into place, Plaintiff would have had no discipline in his file when the company decided to lay off five employees in February of 2016.

43. Because of the March 2015 write-up, which was based on several instances of differential treatment of Plaintiff because of his race, Plaintiff was deemed an unethical employee and a poor performer and was terminated from his position with Kenworth.

44. Plaintiff suffered damages as a result.

### COUNT ONE – As against all Defendants
**Discrimination in violation of Title VII – Disparate treatment on the basis of race**

45. Plaintiff incorporates herein the allegations stated above.

46. Defendants perpetrated unlawful discrimination against Plaintiff on the basis of his race by treating him differently and less preferentially than similarly- situated white employees, to wit, forcing him to take a less desirable shift when other white similarly-situated individuals were not forced to do so; disciplining him for merely relying on the representations of the training department as to his material handlers and not disciplining the team leads (white) or training employees responsible for the issues at

6

hand; disciplining him for taking a vacation day when taking vacation days was common practice and other white similarly-situated employees were not disciplined for the same or similar conduct; refusing to process his timecards in a timely manner and then accusing him of "stealing time" from the company so that he was disciplined and not paid in a timely manner like his white co-workers; and otherwise treating Plaintiff differently and less favorably in all the ways described in the paragraphs hereinabove on the basis of his race related to the tenure, terms, conditions and privileges of his employment and/or any matter directly or indirectly related to his employment .

47.     Defendants' actions as described hereinabove amount to disparate treatment on the basis of his race.

48.     Defendant Paccar is directly liable for the actions of its supervisors/managers.

49.     Defendant Paccar knew or should have known that its employees and supervisors were perpetrating unlawful discrimination against Plaintiff and either ratified this conduct and/or failed to prevent such conduct.

50.     Defendant Paccar is vicariously liable for the acts of its supervisors and employees as described hereinabove.

51.     Defendants' conduct caused damages to Plaintiff.

52.     Defendants' conduct demonstrated actual malice, evil motive or intent, hatred or a reckless or callous indifference to Plaintiff's federally-protected rights.

## COUNT TWO – As Against All Defendants
### Discrimination in violation of Title VII of the Civil Rights Act of 1964– Termination

53.     Plaintiff incorporates herein the allegations stated above.

54.     As a result of the discipline in Plaintiff's file that was unfairly based on his race, Defendants selected Plaintiff for termination.

55.     Plaintiff's termination was therefore unfairly and illegally based on his race.

56.     Plaintiff suffered damages, including lost wages, as a result of his termination.

57.     Defendants are therefore liable to Plaintiff in an amount to be determined at trial.

## COUNT THREE
### (As Against All Defendants)
### Discrimination in violation of Ohio R.C. 4112.02 – Disparate Treatment and Termination on the Basis of Race and 4112.02(J) only as to Individual Defendants

58.     Plaintiff incorporates herein the allegations stated in the paragraphs above.

59.     Plaintiff is a member of a statutorily-protected class.

60.     Defendants treated Plaintiff differently and less favorably than other similarly-situated white employees as described hereinabove; this differential treatment ultimately resulted in Plaintiff's termination.

61.     Defendants therefore perpetrated unlawful discrimination on the basis of race against Plaintiff and are liable to Plaintiff for damages, including lost wages and benefits, in an amount to be determined at trial.

62.     Defendants' conduct demonstrated actual malice, evil motive or intent, hatred or a reckless or callous indifference to Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages in order to be fully and fairly compensated for his damages and injuries caused by Defendants' conduct, for costs and fees associated with this action, for

prejudgment and post-judgment interest according to law, and for such other relief as this Court deems equitable and just.

Dated: June 3, 2017

/s/ Jessica L. Olsheski
Jessica L. Olsheski, Esq. (0078063)
Email: jessica.olsheski@justice-law.net
Olsheski Law Co., LPA
600 East Rich Street
Columbus, Ohio 43215
Telephone: (614) 252-5500
Facsimile: (614) 252-5058
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands that all causes of action be tried to a jury.

/s/ Jessica L. Olsheski
Jessica L. Olsheski, Esq. (0078063)
Attorney for Plaintiff